UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 24-13443-JGR |
| HIGH SOCIETY FREERIDE COMPANY, LLC ) | |
| ) | Chapter 11, Subchapter V |
| Debtor. ) | |

**MOTION FOR ENTRY OF ORDER: 1) APPROVING ASSET PURCHASE AGREEMENT BY AND BETWEEN DEBTOR AND <u>PADDLE NORTH, LLC</u>; 2) AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b), (f), AND (m); AND 3) GRANTING RELATED RELIEF**

The Debtor, High Society Freeride Company, LLC ("Debtor"), by and through its attorneys, Kutner Brinen Dickey Riley, P.C., moves this Court for entry of an Order: 1) approving the Asset Purchase Agreement by and between the Debtor and <u>Paddle North, LLC</u> ("Buyer"); 2) authorizing the Debtor to sell substantially all of its assets free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. §§ 363(b), (f), and (m), Fed. R. Bankr. P. 6004, and L.B.R. 6004-1; 3) authorizing the payment of certain items at closing; and 4) granting related relief. In support thereof, the Debtor states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. The Debtor filed its Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on June 20, 2024 ("Petition Date"). The Debtor remains a debtor in possession and is in operation of its business pursuant to 11 U.S.C. §§ 1107, and 1108.

3. The Debtor is a Colorado limited liability company with its principal place of business located in Aspen, Colorado. The Debtor is engaged in business owning and operating a retail and online store selling equipment for outdoor adventure activities, including paddle boards, apparel, skis, and snowboards.

4. The Debtor maintained a small operation for approximately 20 years until in 2020, with the COVID-19 pandemic limiting leisure activities available to individuals, the Debtor's business expanded significantly as people began to explore more outdoor activities.

5. In 2022, the Debtor began to see a downturn in revenue as the market became flooded with lower cost and lower quality products from large online retailers. This trend continued over the next two years, resulting in the Debtor's need to pivot and expand their product. The Debtor also had a dispute with one of their primary distributors, resulting in disruptions to its supply chain.

6. As a result of the ongoing financial issues, the Debtor entered into a lending agreement with 8fig Inc. ("8fig") for a merchant cash advance. At the time, the Debtor was promised a loan of over $250,000 to bolster its supply and rejuvenate its sales. 8fig initially advanced significantly less than the amount promised while continuing to make promises of future advances to the Debtor, preventing the Debtor from looking for capital from other sources. In February 2023, the Debtor entered into a loan agreement with WebBank to bolster its inventory, but the payment terms for both loans proved to be burdensome to the Debtor and taxed the Debtor's cash flow.

7. As a result, the Debtor filed its voluntary petition for relief pursuant to Chapter 11, Subchapter V to restructure its debt and continue to operate as a going concern.

8. Since the filing of its case, the Debtor has undertaken significant efforts to reduce its overhead operating expenses and return to profitability. The Debtor has moved all of its accounting functions in house, decreasing the expense required to maintain books and records. The Debtor has eliminated its showroom and moved all sales online, eliminating the rental expense for the physical premises and reducing the staff required to maintain operations.

9. The Debtor has been unable to reinvigorate its sales, and has thus elected to proceed with a sale of substantially all of its assets, including its brand assets, logos, trademarks, trade names, intellectual property, product designs, website and associated domains, social media channels, customer lists, supplier contracts, and any remaining inventory.

*C. Contract for Sale with Buyer*

10. On February 4, 2025, the Debtor entered into the Asset Purchase Agreement ("Sale Contract"), by and between the Debtor and the Buyer subject to Court approval. A copy of the Sale Contract is attached hereto as Exhibit A.

11. Pursuant to the Sale Contract, the total purchase price for the assets is $30,000 ("Purchase Price") for substantially all assets of the Debtor, including the Property and any contracts, personal property items, licenses, and rights associated therewith.

12. In accordance with L.B.R. 6004-1(b), the Debtor highlights the following terms of the Sale Contract:

   a. **Agreements with Management**: No agreements are contemplated with the existing management of the Debtor.

   b. **Other Provisions**. The assets are being sold free and clear of liens, claims, and encumbrances.

   c. **Releases**. No release is being provided in connection with the sale.

   d. **Sale Process**. The Debtor has not marketed the assets through a third party broker but has been in discussions with at least four parties in the Debtor's industry or in related industries regarding their potential interest in the assets. The Debtor previously received and had sought approval of a higher offer, but the prospective buyer backed out prior to entry of an order approving the sale.

   e. **Closing and Other Deadlines**. Closing will occur promptly following the entry of an Order approving the sale. No other deadlines exist with respect to the sale.

   f. **Earnest Money Deposit.** No earnest money deposit is contemplated in connection with the sale. The Debtor has verified availability of funds for closing with the Buyer.

   g. **Interim Arrangements with Proposed Buyer.** No interim arrangements have been made with the Buyer.

   h. **Use of Proceeds**. Proceeds will be distributed in accordance with the Bankruptcy Code.

   i. **Tax Exemption**. No tax exemption is being sought in connection with the sale.

   j. **Record Retention**. Notwithstanding the sale of substantially all of its assets, the Debtor will retain all of its books and records as necessary to administer its bankruptcy estate.

   k. **Sale of Avoidance Actions.** No avoidance actions are being sold, transferred, waived, or limited in connection with the sale.

   l. **Limitations on Successor Liability.** As set forth more fully herein, the Debtor is

  requesting findings that the Buyer is a buyer in good faith pursuant to 11 U.S.C. § 363(m).

m. **Sale Free and Clear of Unexpired Leases.** No contracts are contemplated to be included in the sale of the assets. All contracts will be rejected by the Debtor to the extent any remain.

n. **Credit Bid.** The Debtor is not seeking to allow, disallow, or affect credit bidding.

o. **Relief from Fed.R.Bankr.P. 6004(h).** The Debtor seeks relief from the fourteen-day stay imposed by Fed.R.Bankr.P. 6004(h).

### D. *Business Judgment for Acceptance of Sale Contract*

13. The Sale Contract is the highest and best offer received by the Debtor post-petition following the Debtor's marketing efforts with business in the same or related industries.

14. The Debtor is well connected in the industry and approached parties in the same or related market spaces about purchasing the assets. In each instance, the Debtor was marketing its assets to related sellers who may be interested in acquiring primarily the Debtor's intellectual property based on the Debtor's experience in the industry. Almost all of the parties to whom the assets were marketed declined to make an offer on the Debtor's assets.

15. The Debtor previously received one other offer from Motel Echo, LLC ("ME"). While the motion to approve the sale agreement with ME was pending, ME backed out of the sale and withdrew its offer. The offer from the Buyer is the only other offer received by the Debtor. The Debtor has therefore determined that the purchase price is fair and reasonable, and is a greater amount than would be received following an auction or open sale process.

16. The Debtor therefore requests authorization to sell substantially all of the Debtor's assets free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(f).

## **RELIEF REQUESTED**

### A. *Entry of the Sale Order Pursuant to 11 U.S.C. § 363(b)*

17. Pursuant to 11 U.S.C. § 363(b), the debtor in possession may sell assets other than in the ordinary course of business with court approval after notice and opportunity for a hearing.

18. The Bankruptcy Court's power to authorize a sale under section 363(b) is to be exercised at the Court's discretion. *In re WPRV-TV, Inc.*, 983 F.2d 336, 340 (1st Cir. 1993); *New*

*Haven Radio, Inc. v. Meister (In re Martin-Trigona),* 760 F.2d 1334, 1346 (2d Cir. 1985); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1069 (2d Cir. 1983).

19. "In order to approve a sale of substantially all the Debtor's assets outside the ordinary course of business, the following elements must be met. The Debtor must show (1) that a sound business reason exists for the sale; (2) there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer; (3) that the sale price is fair and reasonable; and (4) that the proposed buyer is proceeding in good faith." *In re Med. Software Solutions*, 286 B.R. 431, 439-440 (Bankr. D. Utah 2002).

20. A sound business reason for the sale of substantially all of the Debtor's assets. The Debtor's reorganization efforts have proved to be insufficient to allow the Debtor to propose a feasible Plan of Reorganization. The sale of the Debtor's assets will maximize the value of the assets for the Debtor's creditors.

21. There has been adequate and reasonable notice to interested parties. The Debtor is provided notice of the prior motion to notice to all creditors and parties in interest in accordance with Fed.R.Bankr.P. 2002, L.B.R. 2002-1, and Fed. R. Bankr. P. 7004, and is providing an additional notice with a full notice period for this motion.

22. The purchase price is fair and reasonable. The only other offer received by the Debtor was withdrawn, and the purchase price from the Buyer represents the highest and best offer for the business.

23. The Debtor, in exercising its business judgment, has elected to accept the offer and believes that the purchase price is reasonable and is in the best interests of the Debtor, its estate, and its creditors, as it will result in the maximization of the value of the Property.

**B. Findings that the Buyer is Proceeding in Good Faith Pursuant to 11 U.S.C. § 363(m)**

24. The Buyer is proceeding in good faith. While the Bankruptcy Code does not define "good faith," courts have held that for purposes of section 363(m), a "good faith purchaser" is one who buys "in good faith" and "for value" and that lack of good faith is shown by fraud, collusion, or an attempt to take grossly unfair advantage of other bidders. *In re Abbots Diaries of PA.*, 788 F.2d 143, 147 (3d Cir. Pa. 1986); *In re Tempo Technology Corp.*, 202 B.R. 363, 367 (D. Del. 1996).

25. The sale is the product of arm's length negotiations between the Debtor and Paddle North, LLC. The Buyer has no connections with the Debtor beyond operating in the same general field.

26. The connections disclosed herein are the only connections between the Debtor and the Buyer. No manager of the Debtor or employee of the Debtor has any connection to the Buyer, and will not be involved in any operations with the Buyer following the sale. The sale to the Buyers is in good faith and for fair market value.

27. The Buyer has not engaged in and fraud, collusion, or attempts to take advantage of any other buyer. The Buyer has exercised its own reasonable business judgment in making the offer and has not engaged in any collusion with any other party in doing so.

28. The Debtor therefore requests findings that the Buyer is a buyer in good faith pursuant to 11 U.S.C. § 363(m).

### C. Sale of the Assets Free and Clear Pursuant to 11 U.S.C. § 363(f)

29. The Debtor requests that the sale of the Estate Assets be free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(f).

30. Pursuant to 11 U.S.C. § 363(f), the debtor may sell property "free and clear of any interest in such property of an entity other than the estate, only if – . . . (2) such entity consents; . . . (4) such interest is in a bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest[.]"

31. The Debtor's tangible assets are security for a lien in favor of 8fig. The Debtor anticipates that 8fig will consent to the sale of the assets as it maximizes the value of the assets securing its claim. All liens will attach to the proceeds of the sale until the full extent of the 8fig lien is determined, following which the Debtor or a successor will seek authorization to make distributions.

32. Accordingly, the sale of the Debtor's assets free and clear of any liens, claims, and encumbrances is appropriate pursuant to 11 U.S.C. § 363(f)(2).

### E. Waiver of the Stay Pursuant to Fed. R. Bankr. P. 6004(h)

33. The Debtor further requests a waiver of the stay imposed by Fed. R. Bankr. P. 6004(h). The Buyer is an unrelated third-party, and is eager to close on the sale and proceed with the development of the Property. A waiver of the stay imposed by Rule 6004(h) will ensure that

the Buyer can proceed quickly with the closing on the sale. The waiver of the stay will further expedite closing and ensure that the Buyer has finality in the sale process.

WHEREFORE, the Debtor prays that the Court make and enter an Order: 1) approving the Sale Contract; 2) authorizing the sale of the substantially all of the assets of the Debtor free and clear of liens, claims and encumbrances; 3) waiting the fourteen-day stay under Fed. R. Bankr. P. 6004(h); and 4) for such further and additional relief as to the Court may appear just and proper.

Dated: February 7, 2025                  Respectfully submitted,

                                            By:    */s/ Keri L. Riley*
                                                       Keri L. Riley, #47605
                                                       **KUTNER BRINEN DICKEY RILEY, P.C.**
                                                       1660 Lincoln Street, Suite 1720
                                                       Denver, CO 80264
                                                       Telephone: (303) 832-2400
                                                       E-Mail: klr@kutnerlaw.com

CERTIFICATE OF SERVICE

I certify that on February 7, 2025, I served a complete copy of the foregoing **MOTION FOR ENTRY OF ORDER: 1) APPROVING ASSET PURCHASE AGREEMENT BY AND BETWEEN DEBTOR AND PADDLE NORTH, LLC; 2) AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b), (f), AND (m); AND (3) GRANTING RELATED RELIEF; NOTICE OF MOTION FOR ENTRY OF ORDER: 1) APPROVING ASSET PURCHASE AGREEMENT BY AND BETWEEN DEBTOR AND PADDLE NORTH, LLC; 2) AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b), (f), AND (m); AND (3) GRANTING RELATED RELIEF; ASSET PURCHASE AGREEMENT AMONG HIGH SOCIETY FREERIDE COMPANY, LLC AND PADDLE NORTH, LLC DATED FEBRUARY 4, 2025; AND ORDER GRANTING MOTION FOR ENTRY OF ORDER: 1) APPROVING ASSET PURCHASE AGREEMENT BY AND BETWEEN DEBTOR AND PADDLE NORTH, LLC; 2) AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b), (f), AND (m); AND (3) GRANTING RELATED RELIEF** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Paddle North LLC
Peter Mogck
401 West County Road E2
New Brighton, MN 55112

Benjamin Sales, Esq.
US Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

Mark David Dennis
SL Biggs, A Division of SingerLewak LLP
2000 South Colorado Blvd.
Tower 2, Suite 200
Denver, CO 80222

Shawn M. Christianson, Esq.
Buchalter, a Professional Corporation
425 Market Street
Suite 2900
San Francisco, CA 94105-3493

Deanna Lee Westfall, Esq.
Colorado Department of Law
1300 Broadway
8th Floor
Denver, CO 80203

Joseph Sakay, Esq.
Buchalter, a Professional Corporation
1420 Fifth Avenue
Suite 3100
Seattle, WA 98101


/s/Vicky Martina
**Vicky Martina**

1